UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -- - - - - - - - X

**UNITED STATES OF AMERICA,**

   Plaintiff,

*ex rel.* **RELATOR LLC**, a California limited
liability company,

   Relator,

  v.

**PETER FINN,** an individual; **MARTIN
ETTLEMYER**, an individual; and **FINN
PARTNERS, INC.**, a New York corporation,
and DOES 1-10,

   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - -- - - - - -X

Case No.

**COMPLAINT FOR VIOLATIONS OF
FEDERAL FALSE CLAIMS ACT**

**FILED UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730(b)(2)**

**JURY TRIAL DEMANDED**

Plaintiff RELATOR LLC ("Plaintiff") complains of **PETER FINN,** an individual, **MARTIN ETTLEMYER**, an individual, and **FINN PARTNERS, INC.,** ("FINN"), a New York corporation, and DOES 1-10.

## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

2.      Plaintiff The United States of America is also located in the Southern District of New York. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Southern District of New York, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[1]

3.      Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Southern District of New York.

4.      Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this

---

[1] FINN operates throughout New York, and has its headquarters in Manhattan, New York, in the Southern District of New York.

information to the United States Government prior to filing this *qui tam* action.

## INTRODUCTION AND SUMMARY

5.     In this matter a PR company misappropriated millions of dollars from the US Federal government's Paycheck Protection Program ("PPP"). FINN was one of the first companies with their hand out, and one of the first companies to put in an application for millions of dollars. In order to obtain the loan, the Defendants submitted falsified loan documents to the SBA. Defendants made misstatements regarding their eligibility and falsified the number of employees that they had. Defendants lied about being a small business, and did not have any economic need for the loan, they simply took advantage. In fact, the business was experiencing rapid growth. FINN was experiencing massive growth and acquiring competitors, so much so, that FINN continued its aggressive acquisition of competing companies straight through the pandemic and through 2023. From November 2019 through February 2023, FINN completed a whopping nineteen (19) corporate acquisitions.  It is impossible for a company to, on the one hand, claim that without government assistance it will be unable to support operations, while at the same time going on a shopping spree and buying up many competing businesses. FINN had the money to buy these competing businesses and therefore did not need the money to continue operations, as it falsely certified. Defendants had no economic need for payroll assistance, assuming the loan was even used on payroll. Defendants falsified additional documents which were presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer.

6.     The individual defendants used their PR agency, FINN, to apply for and receive a PPP loan totaling $8,763,500.00, purportedly to cover payroll costs. However, FINN and the individual defendants who controlled FINN:

a.     Falsified loan eligibility;

2

b.      Falsified business type and industry type;

c.      Falsified its status as a "small business" concern as defined;

d.      Falsified that is not a dominant business in its field;

e.      Falsified number of jobs;

f.      Falsified the use of the loans on authorized expenses;

g.      Falsified the economic necessity for the loans; and

h.      Falsified eligibility for loan forgiveness.

7.      <u>Falsified Number of Jobs Reported</u>. FINN lied about being a small business, with 500 employees or less. FINN grossly *underreported* its job numbers to avoid being disqualified. It has and had many more than 500 employees. In its loan applications FINN deceptively claimed to have exactly 500 jobs. It is a fabricated number which was falsely provided by Defendants to get below the 500-employee threshold in order to qualify for the loan. FINN is not a "small business" but rather a large PR agency with reports that its annual revenues exceed $400 million.[2] FINN's own LinkedIn page shows that the company has 1400+ employees. As press release issued by FINN on April 29, 2020 (19 days after its PPP Loan was approved) confirms that FINN had 800 employees then.

8.      <u>Falsified Loan Eligibility – Not a Small Business</u>. FINN was ineligible to receive a PPP loan because it was not a small business. On its loan application, FINN certified that it employed "no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."  FINN

---

[2] According to the US Treasury Department: "It is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to Small Business Administration, upon request, the basis for its certification."

falsely reported the number of employees as being "500", which just so happens to be the maximum number of employees allowed for eligibility. 500 is the limit. Beyond this 500-number limit lies complete ineligibility. It is an all or nothing analysis. If they had even a single more employee, it would make them ineligible for a loan *for any amount*. So, in order to cheat the maximum 500 rule, they falsely reported the number of jobs as 500 exactly. They also applied for the near maximum loan amount allowed, $8,763,500.00. In falsely claiming they had **exactly 500 employees**, FINN claimed to have the maximum number of employees allowable to be eligible for a PPP loan, while maximizing the amount they could get. However, in truth FINN had more than 500 employees and was therefore ineligible, for any amount, because it was not a small business at the time it applied for the loan. Furthermore, the SBA's size standard for businesses in FINN's industry (NAICS Code 541820, Public Relations Agencies) was $16,500,000.00[3] as of the date FINN's loan was approved[4], and Relator is informed and believes that FINN's annual receipts were well in excess of $16,500,000.00. Among other things, it is clear from FINN's stated payroll of $8,763,500.00 for 2.5 months of salaries that the annual receipts of FINN were far in excess of the $16.5 million maximum. Specifically, FINN certified that 100% of the $8,763,500.00 loan was to be used for payroll, which under the PPP and CARES Act rules equates to two and one-half (2 ½) months of salaries, which annualized is equal to annual salaries totaling $42,064,800.00[5]. Therefore, unless FINN operated at a $25,564,800.00 loss when it applied for the loan, it had annual receipts in excess of the $16.5 million size standard applicable for NAICS Code 541820,

---

[3] https://www.ecfr.gov/current/title-13/chapter-I/part-121

[4] The size standards themselves are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small.

[5] Calculation is equal to Loan Amount times 4.8

Public Relations Agencies. Furthermore, there is evidence that FINN has annual revenues of anywhere between $80 million up to and more than $400 million. Therefore, FINN was not and *could not* <u>have been</u> a small business and was not eligible to apply for and receive the PPP Loan.

9.     Small business concerns can be eligible borrowers even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. 15 U.S. Code § 632 (a) (1) generally defines small business concerns as businesses which are "not dominant in its field of operation." Defendant is a highly successful and large business. As one of the most prolific and financially lucrative businesses in its area, is *dominant in its field*. FINN admits as such on their website homepage when they state that "FINN Partners is one of the fastest-growing global, independent marketing and communications agencies in the world." Therefore, it falsely certified that it fits within the definition of a small business concern because a small business for this loan must not be dominant in its field. These loans are intended for companies in financial trouble, not companies who do not need any assistance.

10.     <u>No Economic Necessity</u>. The PPP was made to help struggling businesses <u>which were unsure about being *able* to</u> pay their workers. The second certification in the application was: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." The word "necessary" is important. The SBA required that the COVID pandemic caused enough economic uncertainty <u>such that company payroll was jeopardized</u>. That is a distinct standard. It is <u>not</u> enough that there was some economic uncertainty. The uncertainty must be <u>adverse enough</u> to threaten payroll. There must be sufficient economic uncertainty, such that the company's engine room and most important asset, its people, were threatened with economic troubles. In other words, the business must be on life support. The

business must have been in trouble to the point where its most important resource, its people, were not affordable any longer. The PPP was not a free excuse to raid government coffers by wealthy businessmen. FINN did not need the loans -- there was no "need" or "economic necessity" to pay Defendant's payroll expenses.[6] FINN did not and cannot show any decline in revenue during the pandemic, much less a decline so bad it threatened worker pay. Yet Defendants falsely certified they had "economic uncertainty" so they could take financial assistance from the US taxpayer.

11.    <u>Money Not Returned</u>. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. However, at some point the defendants could have changed course. They could have returned the money. They did not. They doubled down on their misappropriation by seeking loan forgiveness. The $8,763,500.00 in funds should have been returned immediately. This loan should never have been sought in the first place. Yet the Defendants went further by obtaining total loan forgiveness, billing the US taxpayers millions of dollars. *Defendants have not returned the loan proceeds to this day*.

12.    <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further documents to receive loan forgiveness. Defendants had to attest as to the use of the funds and the amount used on authorized purposes. They were not because Defendants could not comply with the requirements of forgiveness given their business type. So, Defendants also lied on their forgiveness documents and application.

13.    <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and intentionally made many materially false statements to the government and bank to obtain the loans.

---

[6] FINN is not a small business in dire financial straits, but rather a well-financed company. Public information shows their revenue was not declining, and their own statements indicate massive growth and profits. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

14.     Plaintiff brings this action as relator on behalf of the United States to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33 Plaintiff gave notice of its intent to file and full disclosure of the evidentiary basis to the Department of Justice ("DOJ").

### THE PARTIES

15.      Plaintiff is a California limited liability company with its principal place of business in Los Angeles County, California.

16.     Defendant Peter Finn is an individual and, at all relevant times herein, is and was the Chief Executive Officer, and Founding Managing Partner of FINN.

17.     Defendant Martin Ettlemyer is an individual and, at all relevant times herein, is and was the Chief Financial Officer of FINN.

18.     Defendant FINN is a New York corporation with its principal place of business located at 301 E 57th Street, New York, New York 10019.

19.     FINN is a public relations agency with its headquarters in Manhattan, New York.

20.     The true names and capacities, whether individual, partner, associate, corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein mentioned.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of said DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained.  Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

21.     Plaintiff is further informed and believes that each of the Defendants, whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

22.     Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified and/or acquiesced in the acts and omissions of each of the remaining Defendants.

23.     Plaintiff is further informed and believes that each of the Defendants herein, whether named as DOES or otherwise, acted in concert, agreement and conspiracy with the other defendants for the common purpose of engaging in a scheme to defraud as alleged below.

### THE CARES ACT AND PAYCHECK PROTECTION PROGRAM

24.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

25.     The CARES Act authorized loans to eligible small businesses struggling to pay employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

26.     Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

27.     On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement

Act (Pub. L. 116-139) was enacted to provide additional funding and authority for the PPP. On June 5, 2020, the PPP Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

28.     Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

29.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative) had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

30.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

31.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer

Yes to the following questions in the Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to

receive a PPP Loan:

| | | | |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ Yes | ☐ No |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan

application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit

to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

32.    SBA Form 2483 includes the following certification, among others: "I have read

the statements included in this form, including the Statements Required by Law and Executive

Orders, and I understand them" (the "Understanding Certification").

33.    SBA Form 2483 also includes the following certification, among others: "The

Applicant is eligible to receive a loan under the rules in effect at the time this application is

submitted that have been issued by the Small Business Administration (SBA) implementing the

Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

34.    SBA Form 2483 also includes the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

35.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

36.    SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

37.    SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (the "Single Loan Certification").

38.    SBA Form 2483 also includes the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the

law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or

a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a

fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC

1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000"

(the "No False Statements Certification").

39.     After the borrower submitted a PPP loan application, it was processed by the

participating lender. If the PPP loan application was approved, the participating lender funded the

loan using its own monies, which were then guaranteed by the SBA. Generally, in the event the

borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lender

and be responsible for its repayment.

40.     Under applicable SBA rules and guidance, recipients of PPP loans could apply to

have principal and interest on the PPP loan fully forgiven, meaning that the borrower would owe

nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP

loan, borrowers had to attest that they had "not reduced the number of employees or the average

paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on

payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been

spent on payroll costs (hereafter the "Loan Forgiveness Certification").

41.     Loans could only be used for certain permitted expenses, such as to pay employees'

salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to

COVID19.

42.     More specifically, the loan forgiveness application (SBA Form 3508), revised as of

July 30, 2021, included the following certifications, among others:

(1)     The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2)    I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

(3)    The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

(4)    The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

43.    On April 23, 2020 in FAQs No. 31, the SBA reiterated that the economic necessity certification must be made in good faith and that publicly traded companies are not likely to be able to make that certification in good faith, stating "it is unlikely that a public company with

13

substantial market value and access to capital markets will be able to make the required certification in good faith…"

## DEFENDANTS' FRAUD

44.     During round 1 of the PPP, Defendant FINN applied for a PPP loan for $8,763,500.00. It was approved on April 10, 2020, by the SBA for the full amount, which was disbursed. The loan was facilitated by East West Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had *exactly 500* employees for which it needed the loan, the maximum number before sized out of eligibility altogether. This loan was forgiven on June 11, 2021.

45.     FINN is expressly prohibited from receiving SBA loans, including PPP loans because FINN was not a "small-business concern" and did not satisfy any of the alternate tests to make it eligible to receive a PPP loan. FINN's CEO and CFO, are sophisticated, experienced businessmen. They knew about the restrictions. The legal and financial experts they had hired over the years would have known this. The Defendants intentionally broke these clear rules knowing what they were doing. The individual defendants successfully operated the hugely successful public relations agency and would have had to manage and investigate the many regulations encountered along the way. They would have quickly discovered that the PPP Loan was not permitted, especially given the amounts involved and the expertise and capabilities of the people working FINN.

46.     The Defendants knew when they claimed that FINN had 500 employees that such a statement was false. FINN did not have <u>exactly 500 employees</u>, they had substantially more than 500 employees and if the true and correct number of their employees was reported by defendants, FINN would not be eligible to obtain a PPP loan, because it would not be a small business. If

FINN had more than 500 employees they could not conceivably qualify as a small business under the size standard principal. Specifically, the maximum amount of annual receipts that FINN could receive and continue to qualify as a small business was $16.5 million as of the date FINN's loan was approved, and FINN had annual revenues far in excess of this maximum amount and was therefore not eligible to receive the PPP Loan.

47.    In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required Economic Certainty certification on the Borrower Application Form stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

48.    FINN abused the PPP program, from misrepresenting its economic need for the loan to willfully ignoring its ineligibility, to maximizing the amount of the loan and then obtaining loan forgiveness. Discovery will reveal where the millions in PPP funds were actually spent, but what is obvious is that Defendants _did not need any money from US taxpayers_. FINN is and was highly profitable during the pandemic, just like most in their industry. FINN did not suffer any business loss and certainly had the money to pay their own worker wages.

49.    Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

50.    The proceeds of the PPP Loans were not and could not have been used only for authorized purposes consistent with the PPP Rule, because, among other things, the Defendant was obviously not allowed to apply for PPP loans because of [their ready access to money as a publicly traded company and] their company size, more than 500 employees. Therefore, when Defendants made the Use of Proceeds Certification, the certification was false.

51.     The proceeds of the PPP Loans were not necessary to support the ongoing operations of FINN. The company was nowhere near a financial precipice. Far from it. The company enjoyed record high business achievements since 2020 until today. This company had considerable financial resources to pay its own workers, assuming that is where the money was spent rather than into the pocket of the CEO and its executives. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

52.     The PPP loan money was only allowed to be used on *authorized* expenses. The proceeds of the PPP Loan were not permitted to be used to pay for the very much affordable business costs for this large publicly traded business with access to billions of dollars in public funding, therefore when Defendant made the Worker Retention and Payroll Certification, the certification was false.

53.     By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

54.     The Defendants actively pursued and obtained loan forgiveness. Because FINN is prohibited from obtaining any PPP loans, its representation on its forgiveness application that it spent 100% of the loan proceeds on eligible expenses was not truthful. The SBA would not have forgiven the loans if they knew Defendants' certifications described above were false.  They also would not have forgiven the loans if they knew the proceeds had been used to increase profits instead of paying their employees.

55.     As a result of the forgiveness, Defendants have not repaid the loan and have kept the proceeds, and the loan has been repaid with money from taxpayers, including the small businesses and owners who were supposed to receive the PPP funds instead of repaying a profitable PR agency's loan that it never should have received, let alone had forgiven.

## THE FALSE CLAIMS ACT

56.    The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

57.     A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-09928.COMMERCE.

## FIRST CAUSE OF ACTION

## FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))

58.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

59.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

60.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically,

each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans. Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

61. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

62. The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

63. Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein, and attorneys' fees in an amount to be proven.

## CONCLUSION

64. Peter Finn, Martin Ettlemyer and their company abused the PPP. The PPP was meant for businesses struggling to afford payroll. Now that program is dry, and many are out of work. The American people have a right to reconciliation.

## **PRAYER FOR RELIEF**

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 2, 2024                    Respectfully submitted,

David L. Hecht
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(646) 502-9515
(857) 557-5204
(646) 396-6452
(646) 777-2489
dhecht@hechtpartners.com

Attorneys for Plaintiff-Relator
RELATOR LLC